**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**KENNETH ALLEN AND WIFE,
MINNIE ALLEN**                                                                       **PLAINTIFFS**

**VS.**                                                             **CIVIL ACTION NO. 2:09cv70KS-MTP**

**REGIONS BANK AS SUCCESSOR
OF FIRST AMERICAN NATIONAL
BANK, OPERATING AS  DEPOSIT
GUARANTY NATIONAL BANK,
A FOREIGN CORPORATION, AND
UNION SECURITY LIFE INSURANCE
COMPANY, A FOREIGN CORPORATION**                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Mandate issued by the Fifth Circuit [Doc. # 44] reversing and remanding this Court's judgment as to the Motion to Compel Arbitration and To Stay All Proceedings filed by Defendant Regions Bank ("Regions"), as Successor of First American National Bank, Operating as Deposit Guaranty National Bank [Doc. # 9] and joined in by Defendant Union Security Life Insurance Company ("USLIC") [Doc. # 13].  Additionally, the Fifth Circuit returned for our consideration the questions of whether USLIC, a non-signatory to the contract, could compel arbitration under either the terms of the Regions agreement or under the theory of equitable estoppel and whether the case should be stayed pending arbitration. *See* Fifth Cir. Op., No. 09-60705 [Doc. # 43].  These arguments were raised in USLIC's Separate Motion to Compel Arbitration and to Stay All Proceedings [Doc. # 16] and memorandum in support [Doc. # 17] which was joined by Regions [Doc. # 18] and the issue was fully briefed by

1

all parties. *See* Pls.' Resp. [Doc. # 24]; USLIC's Reply [Doc. # 29]. The Court, having reviewed the Motion, the various responses and replies, all matters made a part of the record of this case as well as applicable law, and thus being fully advised in the premises, finds that the Motion should be **granted**. The Court specifically finds as follows:

## I. BACKGROUND AND PROCEDURAL HISTORY

On October 7, 1999, Kenneth and Minnie Allen entered into a loan agreement with First American National Bank ("First American"), operating as Deposit Guaranty, in the amount of $54,219.51, which was secured by a deed of trust. At the time the loan was made, First American allegedly reserved $5,177.32 and $7,042.19 to be held in trust by the bank to purchase disability insurance and credit life insurance, respectively. In December 1999, AmSouth became the legal successor to First American. In November 2006, Regions became the legal successor of AmSouth.

In addition to the loan, the Allens maintained bank accounts with Regions. Upon the merger of AmSouth and Regions, Regions amended the AmSouth deposit account terms through the Regions Deposit Agreement, which was mailed to account holders as a part of the Regions Consumer Disclosure Booklet ("Regions Agreement"). This agreement, effective as of October 26, 2007, contained this revised arbitration agreement:

> ARBITRATION AND WAIVER OF JURY TRIAL. Except as expressly provided below, you and we agree that either party may elect to resolve by BINDING ARBITRATION any controversy, claim, counterclaim, dispute, or disagreement between you and us, whether arising before or after the effective date of this Agreement (any "Claim"). This includes, but is not limited to, any controversy, claim, counterclaim, dispute or disagreement arising out of, in connection with or relating to any one or more of the following: (1) the interpretation, execution, administration, amendment or modification of the

> Agreement; (2) any account; (3) any charge or cost incurred pursuant to the Agreement; (4) the collection of any amounts due under the Agreement or any account; (5) any alleged contract or tort arising out of or relating in any way to the Agreement, any account, any transaction, any advertisement or solicitation, or your business interaction or relationship with us; (6) any breach of any provision of the Agreement; (7) any statements or representations made to you with respect to the Agreement, any account, any transaction, any advertisement or solicitation, or your business, interaction, or relationship with us; or (8) any of the foregoing arising out of, in connection with or relating to any agreement which relates to the Agreement, any account, any transaction or your business, interaction or relationship with us.
> . . .
>
> In addition, if we [Regions] become a party in any lawsuit that you have with any third party, whether through intervention by us or by motion made by you or any third party, we may elect to have all claims in that lawsuit between you and such third party to be resolved by BINDING ARBITRATION under this agreement.
> . . .
>
> Any dispute regarding whether a particular controversy is subject to arbitration, including . . . any dispute over the scope or validity of this agreement to arbitrate disputes or of this entire Agreement, shall be decided by the arbitrators(s).

*See* Regions' Mot. Compel Arbitration, Ex. A, Sub-Ex. 4 [Doc. # 9-6 at 33-34].

In 2004, after suffering severe heart problems, Mr. Allen requested disability coverage under the loan's disability insurance policy, but AmSouth denied the existence of the coverage. In 2008, Mr. Allen again contacted Regions and the insurer, USLIC, to request coverage under his disability policy after being diagnosed with a cancerous condition. Regions and USLIC denied the existence of the insurance policy and refused to pay.

Plaintiffs filed a Complaint in this Court on April 9, 2009, seeking actual and punitive damages, asserting that Regions' and USLIC's failure to pay benefits under the loan's disability insurance constituted breach of trust, fraud and misrepresentation, breach of contract, and bad faith. On June 8, 2009, Regions filed a Motion to Compel Arbitration, arguing that the loan fell within the scope of the arbitration clause contained in the Regions Agreement. [Doc. #9].

USLIC joined this motion on June 18, 2009. [Doc. #13].  This Court denied the motion and held that the lengthy Regions Agreement in its Consumer Disclosure Booklet purported to cover "deposit accounts" and expressly excluded consumer loans and therefore, no enforceable arbitration clause was made part of the loan agreement.  On appeal, the Fifth Circuit reversed and remanded holding that the issue of arbitrability was for the arbitrator to decide since there was no dispute that a valid arbitration agreement existed between the parties and the only issue, then, was the scope of the broadly worded arbitration clause.  The Court must now address USLIC's motion to compel [Doc. # 16] in light of the Fifth Circuit's mandate.

## II. APPLICATION AND ANALYSIS

Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4,  provides that where a party has refused to arbitrate under a written arbitration agreement, the other party may petition the court for an order compelling arbitration, and the court shall order the parties to arbitrate if it is satisfied that the making of the agreement is not in issue.  A two-step analysis is applied to determine whether a party may be compelled to arbitrate. *Sherer v. Greentree Serv.*, 548 F.3d 379, 381 (5th Cir. 2008) (*citing J.P. Morgan Chase & Co. v. Conegie*, 492 F.3d 596, 598 (5th Cir. 2007).  First, we ask if the party has agreed to arbitrate the dispute.  *Id.*  If so, we then ask if "any federal statute or policy renders the claims nonarbitrable." *Id.* (*quoting Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004)).  That first step itself contains two questions: (1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement.  *Id.*   "[O]nce a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy

favoring arbitration and must resolve all ambiguities in favor of arbitration." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (citations omitted).

The Fifth Circuit held that it was beyond dispute that an arbitration agreement existed between Regions and the Allens and that the only question was whether the scope of the agreement covered the claims raised. The applicability of the arbitration provision to the issues in the case was determined to be a question for the arbitrator and not the Court. The issue, then, is whether USLIC, a non-signatory to the Regions Agreement, may compel arbitration under the terms of the loan agreement.

In light of the opinion of the Fifth Circuit on appeal and the relevant case law, the Court agrees with USLIC that arbitration is appropriate to determine whether the scope of the validly formed arbitration agreement between the Allens and Regions extends so broadly as to cover the claims brought by the Allens against USLIC. "[T]he 'terms of the agreement' dictate '[w]ho is actually bound by an arbitration agreement.'" *Sherer*, 548 F.3d at 382 (citing *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 355 (5th Cir. 2003)). In *Sherer*, the Fifth Circuit held that a non-signatory loan servicer could compel arbitration under a broad arbitration clause in a loan agreement under which the signatory agreed to arbitrate any claims arising from "the relationships that result from th[e] [a]greement." *Id.* They concluded that "without the Loan Agreement, there would be no loan for Green Tree to service" and that, therefore, the plaintiff agreed to arbitrate with the non-signatory by the plain language of the arbitration agreement. *Id; see also Hawkins v. American Sec. Ins. Co.,* 602 F.Supp.2d 774, 776 (S.D. Miss 2009) (granting non-signatory insurer's motion to compel arbitration because the loan papers "incorporate directly third parties providing a product or service in connection with the transaction").

Here, the Allens agreed expressly that in a lawsuit involving both Regions and a third party, Regions can require that all claims are resolved by arbitration under this agreement. Here, Regions expressly noted its preference for arbitration of the Allens' claims against USLIC by joining in USLIC's motion to compel arbitration. Further, the arbitration agreement provides broad coverage over claims including claims arising out of, in connection with, or relating to (1) a contract that arises out of or relates to the loan agreement, (2) any statement or representation made with respect to the agreement, or (3) any claim "arising out of, in connection with or relating to any agreement which relates to the Agreement, any account, any transaction or your business, interaction or relationship with us." Just as the loan servicing relationship in *Sherer* would not exist but for the Loan Agreement, so, too, the disability and life insurance from USLIC for the Allens' mortgage would not exist but for their loan agreement with Regions. Therefore, having found that a valid agreement to arbitrate exists and that the parties agreed to arbitration for claims involving third parties by the express language of the arbitration agreement, USLIC's motion to compel arbitration should be granted.

Because arbitration is required under the terms of the agreement, it is not necessary for the Court to determine whether equitable estoppel provides a basis for arbitration. *See Sherer*, 548 F.3d at 382 (noting that theories such as equitable estoppel should only be considered if the language of the arbitration agreement does not dictate who is to be bound).

### III. CONCLUSION

IT IS, THEREFORE, ORDERED AND ADJUDGED that it is for the arbitrator to decide the arbitrability of the Allens' claims against Defendant Regions Bank consistent with the Fifth

Circuit's mandate.  Therefore, this Court reverses its opinion set forth in its Order [Doc. # 32], and finds that Defendant Regions Bank's Motion to Compel Arbitration [Doc. # 9] should be **granted**.

IT IS FURTHER ORDERED AND ADJUDGED that Defendant USLIC's Motion to Compel Arbitration [Doc. # 16] is **granted.**

In light of the submission of this case to arbitration, the Court finds that although this case is not dismissed or otherwise disposed of, there is no further reason to maintain the case as an open one for statistical purposes. Should further proceedings in this Court become necessary or desirable following arbitration, any party may move to reopen the case. The parties are directed to contact the Court and provide any appropriate Orders of Dismissal within five (5) days of the arbitration decision or any other final disposition of the case.

SO ORDERED AND ADJUDGED on this, the 13th day of October, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE